# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **Shannon Farabee,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Civil Action No.___-_____ |
| | ) |
| **The Habitat Company LLC and The** | ) |
| **Habitat Company of Alabama LLC** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343(4). This is a suit in equity authorized and instituted pursuant to Title VII of the "Civil Rights Act of 1964" as amended by the "Civil Rights Act of 1991," 42 U.S.C. Section 2000e *et seq* providing injunctive and other relief against sexual harassment or sexual discrimination in employment and U.S.C. Sections 216(b) and 629 for violations of the Age Discrimination in employment act.

2. Plaintiff, Shannon Farabee, has fulfilled all conditions precedent to institution of this suit under the "Civil Rights Act of 1964" as amended by the "Civil Rights Act of 1991." Plaintiff filed her charge of discrimination within 180 days of the last discriminatory act. The Plaintiff received a right to sue letter from the EEOC, following timely filing of her claim of discrimination. Plaintiff has filed this complaint within 90 days of the notification of her right to sue by the EEOC. *See Exhibit #1 – EEOC Right to Sue Letter and Charge of Discrimination.*

### II. PARTIES

3. Plaintiff, Shannon Farabee, (hereinafter "Farabee" or "Plaintiff") is an adult female who is over the age of forty, a citizen of the United States and a resident of Alabama.

4. Plaintiff was employed by the Defendants at all relevant times until she was terminated in November 2016.

5. Defendants Habitat Company LLC (hereinafter "Habitat") and Habitat Company of Alabama LLC (hereinafter "Habitat AL") are Illinois limited liability companies which are doing and/or were doing business in Jefferson County, Alabama and are subject to the "Civil Rights Act of 1964."

### III. STATEMENT OF PLAINTIFF'S CLAIMS

6. Plaintiff alleges and incorporates paragraphs 1-5 by reference with the same force and effect as if fully set forth in detail herein below.

7. Plaintiff was an applicant for a position and/or employed by Defendants during all pertinent and relevant times set out herein.

8. The Plaintiff has been discriminated against by the Defendants' hiring practices based on her sex/age when younger and less experienced male employees for hired as managers.

9. In October 2015, the Plaintiff was made aware of open employment positions with the Defendants through a fellow industry professional, Sheryl Stoffregen.

10. Stoffregen told the Plaintiff that she would be working with the Defendants as regional property manager managing the day to day operations of seven multi-family apartment assets in the Southeast region and would be responsible for hiring and staffing these properties appropriately as needed.

11. Having worked for Ms. Stoffregen for ten years managing multi-family units in the same market, she referenced the Plaintiff's previous experience and talent as a highly recommended and qualified candidate, had no doubt of the Plaintiff's skill-set and past performance and was assured and committed to the Plaintiff that the Plaintiff would be offered one of the positions soon to be available.

12. The Plaintiff was and is a very qualified property management professional with far-reaching industry experience managing multi-million dollar assets and was highly recommended by the Regional Property Manager, Sheryl Stoffregen, to be hired as a property manager beginning around October 1, 2015 through May 2016.

13. The Plaintiff was subsequently denied the opportunity for property manager positions and passed over on 3 different occasions by corporate management, Ted Vernon Jr.-Vice President of Market Rate Management of The Habitat Company LLC.

14. Instead, younger, less qualified, and less experienced male candidates were all hired in these positions.

15. Although Mr. Verner would not allow Sheryl Stoffregen to hire the Plaintiff as a property manager, he did allow her to hire the Plaintiff on June 8, 2016 as Leasing Manager at the Park at Callington & Carlyle, a much lower status position at a lower rate.

16. The Plaintiff accepted the position due to relocating back to Birmingham from Atlanta, GA where she had been Property Manager of a 400+ apartment asset community with Roco Real Estate to assist with improving and stabilizing the Leasing efforts for their Birmingham portfolio.

17. During October 2015, Ms. Stoffregen also made the Plaintiff aware of another Regional Management Position opening up in that market with the same company she felt the Plaintiff would be qualified for as well.

18. Stoffregen put the Plaintiff in contact with Lori Flaska, Human Resource Director for Habitat, whom Plaintiff had a phone interview with on October 14, 2015, and later invited back for a personal interview and meeting with both Lori Flaska, the HR Director, and Ted Vernon.

19. Based on information and belief, the Defendants still have not hired or filled this Regional Manager position. Until approximately July 2016, the position was still posted on their website with the October 2015 date. This was just for the Hoover, Alabama market.

20. In December 2015, Sheryl made the Plaintiff aware and the Plaintiff noticed a qualified positions available for Property Manager of the Park at Callington & Carlyle. However, a less experienced male, Eric White, was hired.

21. Again in February 2016, the Plaintiff inquired with Lori Flaska to be considered for property manager as they were hiring again for a property manager at the Park at Callington and Carlyle.

22. Upon request, the Plaintiff sent Ms. Flaska an updated resume and with no further contact or response by the Defendants, Jason Walker, a young male with less experience and qualifications, was hired.

23. In May 2016, Ms. Stoffregen made me aware of another property manager position at the Park at Buckingham.

24. The Plaintiff was working in Atlanta at the time and wanted to come home to Birmingham and she told the Plaintiff that she should be able to get the Plaintiff hired for this property.

25. However, Habitat hired another younger, less qualified male, Justin Brown.

26. Justin Brown had actually previously worked under the Plaintiff's supervision at another company.

27. One week later the Defendants offered the Plaintiff a lower status and lower pay position of Leasing Manager at Callington & Carlyle.

28. As a result of Habitat's hiring practices, the Plaintiff has been discriminated against based on my sex and age.

29. The Plaintiff is a highly qualified over the age of 40 female with much more experience in comparison to the younger and less qualified male counterparts who were hired for these company positions.

30. When the Plaintiff asked Ms. Stoffregen for an explanation of the Defendants' hiring decisions, she told the Plaintiff there was never any valid explanation for Ted Verner's decision and she was disconcerted by his actions as well.

31. Not only have these hiring practices of the company affected the Plaintiff, they have also unfairly affected her fellow female employee, Kelly Humber, who applied for the same property manager position the Plaintiff did prior to the Plaintiff's inquiry of same

position and was also passed over and offered a lower status position and pay as an Administrative Assistant.

32. Several of the higher property management positions held in the Southeast regional portfolio of The Habitat Company are held by male employees with less experience than the Plaintiff had in the profession.

33. All three property management positions at another nearby apartment asset of The Habitat Company were filled and staffed with younger male new hires approved by Theodore "Ted" Verner and corporate management.

34. Based upon information and belief, Ted Verner repeatedly and consistently made sexist, misogynist and discriminatory statements about women.

## COUNT I: SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHT ACT OF 1964

35. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

36. Defendants have discriminated against the Plaintiff on the basis of her sex in violation of Title VII in failing to take proper steps to insure that the Plaintiff was not discriminated against and placed in a hostile work environment or received disparate treatment on the basis of her sex.

37. The Plaintiff was discriminated against as set out above in the statement of facts for a failure to hired, a failure to promote, a failure to pay her a salary equal to or greater than a less experienced and less qualified mail employee.

38. Plaintiff has no plain, adequate or complete remedy at law, and this suit for back pay, injunctive relief, and declaratory judgment is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT III: AGE DISCRIMINATION

39. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

40. Defendants have discriminated against the Plaintiff on the basis of her age in violation of the Age Discrimination in Employment Act by failing to take proper steps to insure that the Plaintiff was not discriminated against and/or received disparate treatment on the basis of her age.

41. The Plaintiff was discriminated against as set out above in the statement of facts for a failure to hired, a failure to promote, a failure to pay her a salary equal to or greater than a younger make employee with less experience.

42. Plaintiff has no plain, adequate or complete remedy at law, and this suit for back pay, injunctive relief, and declaratory judgment is her only means of securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from defendant's unlawful policies and practices as set forth herein unless enjoined by this Court

## COUNT IV: NEGLIGENT HIRING, TRAINING, RETENTION AND SUPERVISION

43. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

44. The Defendant had a duty to hire, supervise, and train its employees and/or managers in the proper manner of dealing, on a day to day basis, with employees, in a non-harassing or discriminating fashion.

45. The Defendants were aware of and/or should have been aware of Ted Verner's discriminatory and misogynist statements and his view towards women.

46. The Defendants negligently and/or wantonly breached the duty owed to the plaintiff in failing to take the appropriate steps to safeguard the plaintiff from harassing and/or discriminatory behavior failing to properly train Ted Verner in proper conduct with employees, and failed to properly supervise Verner to assure that Verner would not act in a harassing and/or discriminatory fashion.

47. The plaintiff has been injured and damaged as a proximate result of the aforementioned breach.

## COUNT V: RESPONDEAT SUPERIOR / VICARIOUS LIABILITY

48. The plaintiff hereby restates, realleges and incorporates by reference the allegations set forth above.

49. Defendants are vicariously liable for the actions of its employee, Ted Verner.

50. When Ted Verner engaged in sexist and misogynist behavior and discriminated against the Plaintiff, he was working within the line and scope of his employment.

51. The acts committed by Ted Verner were committed in the furtherance of the business of the Defendants.

52. Defendants participated in, authorized and/or ratified the wrongful acts of Ted Verner.

53. Defendants adopted or implicitly approved of the behavior of Verner.

54. Defendants had actual knowledge of the tortious conduct of Ted Verner and that the tortious conduct was directed and visited upon the Plaintiff.

55. Based upon this knowledge, Defendants knew, or should have known, that Ted Verner's conduct constituted sexual discrimination and/or a continuing tort.

56. Defendants failed to take adequate steps to remedy the situation.

57. As a result of the conduct and omissions of the Defendants, the Plaintiff has been damaged.

## IV. PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court assume jurisdiction of this action and award the Plaintiff the following relief:

A.      Enter a declaratory judgment that defendants' acts, policies, practices and procedures as described herein have violated and continue to violate the rights of Plaintiff as secured by Title VII of the "Civil Rights Act of 1964" as amended.

B.      Grant Plaintiff a permanent injunction enjoining defendants, its agents, successors, employees, attorneys and those acting with defendant or at the defendant's request from violating Title VII of the "Civil Rights Act of 1964" as amended.

C.      Grant plaintiff an order requiring defendant to make her whole by granting appropriate declaratory relief, back pay, lost seniority, lost fringe benefits, attorney's fees, expenses, costs, compensatory damages (including but not limited to damages for mental anguish), punitive damages, consequential damages, pre-judgment interest; and

D.      Grant the plaintiff compensatory and punitive damages for any and all state law claims;

E.      Plaintiff prays for such other, further, different or additional relief which justice may require or to which Plaintiff is entitled to under law and equity.

**Plaintiff demands a trial by a struck jury**

      Respectfully submitted,

      <u>/s/ Scott Harwell</u>
      Scott Harwell

**<u>HARWELL LAW FIRM LLC</u>**
109 Foothills Parkway #112
Chelsea, AL 35043
(205) 999-1099
Scott@HarwellLaw.com